Approved: *Mollie Bracewell*
MOLLIE BRACEWELL
Assistant U.S. Attorney

Before: THE HONORABLE HENRY B. PITMAN
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA, :

     - v. - :

RUSS GERSON, :

        Defendant. :

- - - - - - - - - - - - - - - x

**SEALED COMPLAINT**

Violation of

18 U.S.C. § 1343

COUNTY OF OFFENSE:
NEW YORK

17 MAG 7743

SOUTHERN DISTRICT OF NEW YORK, ss.:

     DEANNA PENNETTA, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation, and charges as follows:

COUNT ONE
(Wire Fraud)

     1. From at least in or about November 2014 up to and including at least in or about February 2015, in the Southern District of New York and elsewhere, RUSS GERSON, the defendant, having devised and intending to devise, a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, or promises, did transmit and caused to be transmitted by means of wire, radio, and television communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, GERSON obtained thousands of dollars for a purported sublease of office space for his defunct asset management firm, knowing that he was not permitted to sublease the space, and used the money for personal expenses.

     (Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and for the foregoing charge is, in part, as follows:

2. I have been a Special Agent with the Federal Bureau of Investigation for over six years. I am currently assigned to a financial crimes group. I have participated in and conducted many criminal investigations involving violations of federal fraud statutes. In the course of these investigations I have analyzed bank statements and other financial records, conducted surveillance, participated in the execution of search and arrest warrants, and seized evidence of violations of federal law.

3. The information contained in this Complaint is based upon my personal knowledge, as well as information obtained during this investigation, directly or indirectly, from other sources, including, but not limited to: (a) business records and other documents, including bank records and records of electronic communications; (b) publicly available documents; (c) conversations with, and reports of interviews with, non-law-enforcement witnesses; (d) conversations with, and reports prepared by, other FBI and law enforcement agents. Because this Complaint is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions and statements of and conversations with others are reported herein, they are reported in substance and in part. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

4. In or about May 2013, RUSS GERSON, the defendant, and a business partner, founded and announced the launch of a new asset management firm, Phoenix Star Capital ("Phoenix Star") in New York, New York.

5. From my review of press releases and other marketing materials by Phoenix Star, as well as records of civil court proceedings involving RUSS GERSON, the defendant, I know that Phoenix Star was located in a high-end office building on Third Avenue in New York, New York (the "Third Avenue Office").

6. On or about August 31, 2014, Phoenix Star vacated the Third Avenue Office.

7.  Based on my conversations with Victim-1, and my review of the documents that he provided, I have learned that:

   a.  In or about November 2014, Victim-1, the managing partner of an investment advisory firm, was attempting to lease new office space for his firm.

   b.  A broker contacted Victim-1 about available office space to sublet at the Third Avenue Office, which had been recently vacated by Phoenix Star.

   c.  Victim-1 visited the Third Avenue Office and was advised that GERSON was the current tenant, that GERSON no longer required use of the office space, and was interested in having a new tenant take over his lease.

   d.  Shortly after visiting the Third Avenue Office, Victim-1 communicated to the broker that he was interested in subleasing the space from GERSON.

   e.  In or about December 2014, Victim-1 and GERSON negotiated the terms of the sublease and agreed upon a rent of approximately $11,100 per month, although the exact amount varied over time.

   f.  GERSON also required Victim-1 to make an initial deposit of approximately $44,000, stating that the amount represented a security deposit plus the first three months' rent.

   g.  On or about January 12, 2015, GERSON and Victim-1 executed a sublease agreement.

   h.  On or about January 14, 2015, Victim-1 wired approximately $44,000 to GERSON.

   i.  Section 24 of the executed sublease agreement provided that the agreement was contingent upon GERSON obtaining the consent of building management for the sublease by February 1, 2015, and that, if such consent was not obtained, the sublease agreement would be null and void and the deposit returned.

   j.  GERSON failed to obtain consent by February 1, 2015.

3

          k.   On or about February 2, 2015, Victim-1 notified GERSON that GERSON was required to return his deposit.

          l.   In the days that followed, Victim-1 made multiple attempts, on his own and through an attorney, to obtain his deposit from GERSON.

          m.   On or about February 10, 2015, GERSON hand-delivered a check to Victim-1 in the amount of approximately $47,500, stating that he wanted to cover the deposit plus Victim-1's legal fees. GERSON post-dated the check by several days.

          n.   When Victim-1 attempted to deposit the check on the indicated date, he was advised by his financial institution that the funds were not available.

          o.   Shortly thereafter, Victim-1 contacted the Director of Leasing for the building in which the Third Avenue Office was located to inquire about the sublease (the "Director of Leasing"). The Director of Leasing advised Victim-1 that GERSON never submitted any sublease agreement for building management approval. The Director of Leasing further advised that GERSON had not paid on his lease since in or about August 2014, and was therefore not permitted to sublease his space until his account was paid and current.

          p.   After speaking with the Director of Leasing, Victim-1 contacted GERSON and asked him whether he ever submitted the sublease agreement for approval. GERSON confirmed that he did not.

    8.   Based on my conversations with the Director of Leasing, I have learned that:

          a.   GERSON was advised that tenants of the building in which the Third Avenue Office was located (the "Third Avenue Building") were not permitted to sublease their space unless their rent payments were current and they were otherwise in good standing with the building.

          b.   GERSON was seriously delinquent on his rent payments, and had not paid since in or about August 2014.

c. In or about the fall of 2014, GERSON inquired about subleasing the space. The Director of Leasing advised him that he would not be permitted to sublease until his account was current.

d. GERSON failed to make any additional rent payments and never sought further approval for a sublease arrangement.

9. Based on my review of GERSON's banks statements, I have learned that:

a. On or about January 14, 2015, GERSON received a wire from an account of Victim-1's financial advisory firm with JP Morgan Chase ~~in Manhattan~~ into a newly-opened account ("Account-1") at a financial institution located in Greenwich, Connecticut under the name of GERSON GROUP ENTERPRISES LLC. Victim-1's wire of approximately $44,000 was the opening deposit in the Account-1.

b. From on or about January 14, 2015, to on or about February 27, 2015, no other deposits were made into Account-1. During the same time period, GERSON transferred approximately $44,000 out of Account-1 into two other accounts (Account-2 and Account-3) also under the name of GERSON GROUP ENTERPRISES LLC and controlled by GERSON.

c. GERSON then spent the funds on personal items, including approximately $10,064 in restaurants, grocery and liquor stores, $5,319 in retail purchases, and $4,286 in cash withdrawals and associated fees.

d. On or about February 20, 2015, GERSON wrote a check for approximately $47,500 from Account-2 to Victim-1, which was returned for insufficient funds on or about February 23, 2015.

Deponent prays that an arrest warrant be issued for RUSS GERSON, the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

_____
DEANNA PENNETTA
Special Agent
Federal Bureau of Investigation

Sworn to before me this
18th day of October 2017.

_____
THE HONORABLE HENRY B. PITMAN
United States Magistrate Judge
Southern District of New York